# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **BRUCE S. WRIGHT** and<br>**LOUISE K. WRIGHT,**<br><br>      Plaintiffs,<br><br>v.<br><br>**CUMMINS INC.**<br><br>**AIR & LIQUID SYSTEMS CORPORATION**<br>as successor-by-merger to BUFFALO PUMPS,<br>INC.<br><br>**ALFA LAVAL INC.**<br><br>**CAMERON INTERNATIONAL<br>CORPORATION** f/k/a COOPER CAMERON<br>CORPORATION, individually and as successor-<br>in-interest to THE COOPER-BESSEMER<br>CORPORATION<br><br>**CARRIER CORPORATION**<br><br>**ELLIOTT COMPANY**<br><br>**FLOWSERVE US INC.**<br>individually and as successor-in-interest to<br>EDWARD VALVES, INC.<br><br>**FMC CORPORATION**<br>individually and as successor-in-interest to<br>NORTHERN PUMPS<br><br>**GENERAL ELECTRIC COMPANY**<br><br>**IMO INDUSTRIES INC.**<br><br>**ITT LLC**<br><br>**JENKINS BROS.** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO.**<br>**1:23-cv-10496**<br><br><br><br><br><br><br>**ORIGINAL COMPLAINT**<br><br><br><br>**PLAINTIFFS DEMAND A JURY TRIAL** |

**METROPOLITAN LIFE INSURANCE COMPANY** §
§
§
**PARAMOUNT GLOBAL**, f/k/a VIACOMCBS §
INC., f/k/a VIACOM INC., f/k/a CBS §
CORPORATION, a Delaware corporation, f/k/a §
VIACOM, INC., successor-by-merger to CBS §
CORPORATION, a Pennsylvania corporation, §
f/k/a WESTINGHOUSE ELECTRIC §
CORPORATION, individually and as successor- §
in-interest to BF STURTEVANT CO. §
§
**REDCO CORPORATION** f/k/a CRANE CO. §
§
**SUPERIOR LIDGERWOOD MUNDY** §
**CORP.**, a/k/a LIDGERWOOD §
MANUFACTURING CO., individually and as §
successor to M.T. DAVIDSON CO. §
§
**VALVES AND CONTROLS US, INC.** f/k/a §
WEIR VALVES & CONTROLS USA, INC. f/k/a §
ATWOOD & MORRILL CO., INC. §
§
**WARREN PUMPS LLC** §
§
**CARLISLE INDUSTRIAL BRAKE &** §
**FRICTION, INC.**, f/k/a MOTION CONTROL §
INDUSTRIES, INC. §
§
**CATERPILLAR INC.** §
§
**CRA TRAILERS, INC.** f/k/a GREAT DANE §
TRAILERS, INC. §
§
**DAIMLER TRUCK NORTH AMERICA LLC** §
f/k/a DAIMLER TRUCKS NORTH AMERICA §
LLC f/k/a FREIGHTLINER LLC f/k/a §
FREIGHTLINE CORPORATION, individually §
and as successor to WESTERN STAR TRUCKS §
§
**DCO LLC** f/k/a DANA COMPANIES LLC §
§
**DETROIT DIESEL CORPORATION** §
§
**EATON CORPORATION** §
§

2

**FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST**, as successor to FELT PRODUCTS MANUFACTURING CO. and/or the former VELLUMOID DIVISION OF FEDERAL-MOGUL CORPORATION

**FLEETPRIDE, INC.**

**FORD MOTOR COMPANY**

**GENUINE PARTS COMPANY**, d/b/a NAPA

**HOLLINGSWORTH & VOSE COMPANY**

**HONEYWELL INTERNATIONAL INC.**, f/k/a ALLIEDSIGNAL INC., as successor-in-interest to THE BENDIX CORPORATION

**LIPE AUTOMATION CORP.** f/k/a LIPE-ROLLWAY CORPORATION, a dissolved New York corporation

**MACK TRUCKS, INC.**, individually and as successor-in-interest to BROCKWAY MOTOR COMPANY

**MCCORD CORPORATION**

**MERITOR, INC.**, f/k/a ARVINMERITOR, INC., successor-in-interest to ROCKWELL INTERNATIONAL CORPORATION

**MORSE TEC LLC**, f/k/a BORGWARNER MORSE TEC LLC, successor-by-merger to BORG-WARNER CORPORATION

**NAVISTAR, INC.**, successor to INTERNATIONAL TRUCK AND ENGINE COMPANY f/k/a INTERNATIONAL HARVESTER COMPANY

**PACCAR INC.**, d/b/a KENWORTH TRUCK COMPANY and PETERBILT TRUCK COMPANY

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

3

**PARKER-HANNIFIN CORPORATION,** §
successor to EIS AUTOMOTIVE §
CORPORATION §
§
**PNEUMO ABEX LLC**, successor-in-interest to §
ABEX CORPORATION §
§
**SCAN-PAC MFG., INC.** §
§
**STANDARD MOTOR PRODUCTS, INC.,** §
successor-in-interest to EIS AUTOMOTIVE §
CORPORATION §
§
**STRICK TRAILERS, LLC**, individually and as §
successor-in-interest to STRICK §
CORPORATION f/k/a STRICK TRAILER §
CORPORATION §
§
**THE TIMKEN COMPANY** §
§
**UNION CARBIDE CORPORATION** §
§
**VOLVO GROUP NORTH AMERICA, LLC** §
§
**WESTERN STAR TRUCK SALES, INC.** §
§
**ZF ACTIVE SAFETY US INC.**, f/k/a §
KELSEY-HAYES COMPANY, individually and §
as successor-in-interest to FRUEHAUF
CORPORATION

Defendants.

<u>**CIVIL ACTION COMPLAINT**</u>

Plaintiffs BRUCE S. WRIGHT and LOUISE K. WRIGHT sue the above-named

Defendants for compensatory and punitive damages, by and through their undersigned attorneys,

and hereby bring this Civil Action Complaint, and allege:

4

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties pursuant to 28 USC §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

2.      This Court has personal jurisdiction over the Defendants because Plaintiffs' claims arise from Defendants' conduct in:

(a)      Transacting business in the Commonwealth of Massachusetts, including the sale, supply, purchase, and/or use of asbestos and/or asbestos-containing products, within this State;

(b)      Contracting to supply services or things in this State;

(c)      Commission of a tortious act in whole or in part in this State;

(d)      Having an interest in, using, or possessing real property in this State; and/or

(e)      Entering into a contract to be performed in whole or in part by either party in this State.

3.      Plaintiffs' claims against the Product Defendants, as defined herein, arise out of Defendants' purposeful efforts to serve directly or indirectly the market for their asbestos and/or asbestos-containing products in the Commonwealth of Massachusetts, either through direct sales or through utilizing an established distribution channel with the expectation that their products would be purchased and/or used within Massachusetts.

4.      All of the named Defendants are corporations whose substantial and/or systematic business in Massachusetts caused injury to Plaintiffs in the Commonwealth, which subjects them to the jurisdiction of the Massachusetts courts pursuant to the Massachusetts Long-Arm Statute and the United States Constitution.

5.      Pursuant to 28 USC §1391(b)(2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in Massachusetts.

5

## GENERAL ALLEGATIONS

6.    Plaintiff BRUCE S. WRIGHT was diagnosed with malignant mesothelioma on or about November 13, 2022.

7.    Plaintiff BRUCE S. WRIGHT's cumulative exposure to asbestos as a result of acts and omissions of Defendants and their defective products, individually and together, was a substantial factor in causing Plaintiff's mesothelioma and other related injuries and therefore under Massachusetts law is the legal cause of Plaintiff's injuries and damages.

8.    Plaintiff BRUCE S. WRIGHT was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

9.    Plaintiff BRUCE S. WRIGHT worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

10.    Each of the named Defendants is liable for damages stemming from its own tortious conduct or the tortious conduct of an "alternate entity" as hereinafter defined.  Defendants are liable for the acts of their "alternate entity" and each of them, in that there has been a corporate name change, Defendant is the successor by merger, by successor in interest, or by other acquisition resulting in a virtual destruction of Plaintiff's remedy against each such "alternate entity"; Defendants, each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entities" have acquired the assets, product line, or a portion thereof of each such Defendant; Defendants, and each of them, caused the destruction of Plaintiff's remedy against each such "alternate entity"; each such Defendant has the ability to

6

assume the risk-spreading role of each such "alternate entity;" and that each such defendant enjoys the goodwill originally attached to each "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CUMMINS INC. | CUMMINS ENGINE COMPANY, INC. |
| AIR & LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| ALFA LAVAL INC. | SHARPLES, INC.<br>ALFA LAVAL SEPARATION, INC.<br>DE LAVAL SEPARATOR COMPANY |
| CAMERON INTERNATIONAL CORPORATION | COOPER CAMERON CORPORATION<br>THE COOPER-BESSEMER CORPORATION |
| ELLIOTT COMPANY | ELLIOTT TURBOMACHINERY CO., INC. |
| FLOWSERVE US INC. | EDWARD VALVES, INC. |
| FMC CORPORATION | NORTHERN PUMPS |
| IMO INDUSTRIES, INC. | DELAVAL STEAM TURBINE COMPANY |
| ITT LLC | ITT CORPORATION,<br>ITT INDUSTRIES INC.<br>ITT FLUID PRODUCTS CORP.<br>HOFFMAN SPECIALTY MFG. CORP.<br>BELL AND GOSSETT COMPANY<br>FOSTER ENGINEERING |
| METROPOLITAN LIFE INSURANCE COMPANY | METLIFE INC. |
| PARAMOUNT GLOBAL | VIACOMCBS INC.<br>VIACOM INC.<br>CBS CORPORATION (a Delaware corporation)<br>VIACOM, INC.<br>CBS CORPORATION (a Pennsylvania corporation) |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
|  | WESTINGHOUSE ELECTRIC CORPORATION<br>B.F. STURTEVANT CO. |
| REDCO CORPORATION | CRANE CO.<br>CHAPMAN VALVE MFG. CO.<br>SWARTWOUT CO. |
| SUPERIOR LIDGERWOOD MUNDY CORP. | M.T. DAVIDSON CO. |
| VALVES AND CONTROLS US, INC. | WEIR VALVES & CONTROLS USA, INC.<br>ATWOOD & MORRILL CO., INC. |
| WARREN PUMPS LLC | QUIMBY PUMP COMPANY |
| CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. | MOTION CONTROL INDUSTRIES, INC. |
| CRA TRAILERS, INC. | GREAT DANE TRAILERS, INC. |
| DAIMLER TRUCK NORTH AMERICA LLC | DAIMLER TRUCKS NORTH AMERICA LLC<br>FREIGHTLINER LLC<br>FREIGHTLINER CORPORATION<br>WESTERN STAR TRUCKS |
| DCO LLC | DANA COMPANIES, LLC<br>DANA CORPORATION<br>VICTOR PRODUCTS DIVISION<br>VICTOR MANUFACTURING & GASKET CO.<br>SPICER MANUFACTURING COMPANY |
| FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST | FELT PRODUCTS MANUFACTURING CO.<br>VELLUMOID DIVISION OF FEDERAL-MOGUL CORPORATION |
| GENUINE PARTS COMPANY | NATIONAL AUTOMOTIVE PARTS ASSOCIATION LLC<br>NAPA AUTO PARTS<br>NAPA |
| HONEYWELL INTERNATIONAL INC. | ALLIEDSIGNAL INC.<br>THE BENDIX CORPORATION |
| LIPE AUTOMATION CORP. | LIPE-ROLLWAY CORPORATION<br>LIPE CLUTCH PRODUCTS, INC.<br>W.C. LIPE, INC. |

8

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| MACK TRUCKS, INC. | BROCKWAY MOTOR COMPANY |
| MCCORD CORPORATION | MCCORD GASKET CORPORATION |
| MERITOR, INC. | ARVINMERITOR, INC.<br>ROCKWELL INTERNATIONAL CORPORATION |
| MORSE TEC LLC | BORGWARNER MORSE TEC LLC<br>BORG-WARNER CORPORATION |
| NAVISTAR, INC. | INTERNATIONAL TRUCK AND ENGINE COMPANY<br>INTERNATIONAL HARVESTER COMPANY |
| PACCAR INC. | KENWORTH TRUCK COMPANY<br>PETERBILT TRUCK COMPANY |
| PARKER-HANNIFIN CORPORATION | EIS AUTOMOTIVE CORPORATION |
| PNEUMO ABEX LLC | ABEX CORPORATION<br>AMERICAN BRAKE SHOE COMPANY<br>AMERICAN BRAKEBLOK<br>AMERICAN BRAKE MATERIALS CORP.<br>AMERICAN BRAKE SHOE & FOUNDRY CO. |
| STANDARD MOTOR PRODUCTS, INC. | EIS AUTOMOTIVE CORPORATION |
| STRICK TRAILERS, LLC | STRICK CORPORATION<br>STRICK TRAILER CORPORATION |
| THE TIMKEN COMPANY | THE TIMKEN ROLLER BEARING AXLE COMPANY<br>THE TIMKEN ROLLER BEARING COMPANY |
| ZF ACTIVE SAFETY US INC. | KELSEY-HAYES COMPANY<br>FRUEHAF CORPORATION |

11.    Plaintiffs have been informed and believe, and thereon allege, that at all times herein mentioned, Defendants or their "alternate entities" were or are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the Commonwealth of Massachusetts, or the laws of some other state or foreign jurisdiction, and that said Defendants were and/or are authorized to do

9

business in the Commonwealth of Massachusetts, and that said Defendants have regularly conducted business in the Commonwealth of Massachusetts.

12.    Plaintiffs have been informed and believe, and thereon allege, that progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

13.    As a direct and proximate result of the conduct as alleged within, Plaintiff BRUCE S. WRIGHT has suffered permanent injuries, including, but not limited to, mesothelioma and other lung damage, as well as the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

14.    As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff BRUCE S. WRIGHT incurred and is continuing to incur liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time.  Plaintiff requests leave to supplement this Court and all parties accordingly when the true and exact cost of Plaintiff's medical treatment is ascertained.

## PARTIES

15.    The Plaintiffs, BRUCE S. WRIGHT and LOUISE K. WRIGHT, are current citizens of the State of Connecticut and former citizens of the Commonwealth of Massachusetts

where BRUCE S. WRIGHT was exposed to asbestos during his military service and throughout his civilian career.

16.    The Defendants that manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials for use in Massachusetts and other states at times relevant to this action are referred to herein as "Product Defendants." At all times relevant to this action, the Product Defendants and the predecessors of the Product Defendants for whose actions the Product Defendants are legally responsible, were engaged in the manufacture, sale, and distribution of asbestos-containing products and raw materials.

17.    At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos, and products manufactured for foreseeable use with asbestos products.

18.    Defendant, **CUMMINS INC.** was and is a company incorporated under the laws of the State of Indiana with its principal place of business in Indiana. At all times material hereto, CUMMINS INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to,

asbestos-containing Cummins diesel engines. Plaintiffs sued CUMMINS INC. as a Product Defendant. Plaintiffs' claims against CUMMINS INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

19. Defendant, **AIR & LIQUID SYSTEMS CORPORATION**, as successor-by-merger to BUFFALO PUMPS, INC., was and is a company incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania. At all times material hereto, AIR & LIQUID SYSTEMS CORPORATION manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Buffalo pumps. Plaintiffs sued AIR & LIQUID SYSTEMS CORPORATION as a Product Defendant. Plaintiffs' claims against AIR & LIQUID SYSTEMS CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

20. Defendant, **ALFA LAVAL INC.**, was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in Virginia. At all times material hereto, ALFA LAVAL INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing DeLaval purifiers. Plaintiffs sued ALFA LAVAL INC. as a Product Defendant. Plaintiffs' claims against ALFA LAVAL INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

21. Defendant, **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION, individually and as successor-in-interest to THE COOPER-

BESSEMER CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, CAMERON INTERNATIONAL CORPORATION manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Cooper-Bessemer emergency diesel generators. Plaintiffs sued CAMERON INTERNATIONAL CORPORATION as a Product Defendant. Plaintiffs' claims against CAMERON INTERNATIONAL CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

22.     Defendant, **CARRIER CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Florida. At all times material hereto, CARRIER CORPORATION manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Carrier compressors. Plaintiffs sued CARRIER CORPORATION as a Product Defendant. Plaintiffs' claims against CARRIER CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

23.     Defendant, **ELLIOTT COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, ELLIOTT COMPANY manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Elliott deaerating feed tanks. Plaintiffs

13

sued ELLIOTT COMPANY as a Product Defendant. Plaintiffs' claims against ELLIOTT COMPANY arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

24.     Defendant, **FLOWSERVE US INC.**, individually and as successor-in-interest to EDWARD VALVES, INC., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, FLOWSERVE US INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Edward valves. Plaintiffs sued FLOWSERVE US INC. as a Product Defendant. Plaintiffs' claims against FLOWSERVE US INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

25.     Defendant, **FMC CORPORATION**, individually and as successor-in-interest to NORTHERN PUMPS, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, FMC CORPORATION manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Northern pumps. Plaintiffs sued FMC CORPORATION as a Product Defendant. Plaintiffs' claims against FMC CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

26.     Defendant, **GENERAL ELECTRIC COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in

Massachusetts. At all times material hereto, GENERAL ELECTRIC COMPANY manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing General Electric main propulsion turbines and ship service turbine generators. Plaintiffs sued GENERAL ELECTRIC COMPANY as a Product Defendant. Plaintiffs' claims against GENERAL ELECTRIC COMPANY arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

27.    Defendant, **IMO INDUSTRIES INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Maryland. At all times material hereto, IMO INDUSTRIES INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing DeLaval pumps and steam turbines. Plaintiffs sued IMO INDUSTRIES INC. as a Product Defendant. Plaintiffs' claims against IMO INDUSTRIES, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

28.    Defendant, **ITT LLC**, was and is a limited liability company incorporated under the laws of the State of Indiana with its principal place of business in Connecticut. ITT LLC is a wholly owned subsidiary of ITT Inc., an Indiana corporation. At all times material hereto, ITT LLC manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-

insulated and asbestos-containing Foster Engineering valves. Plaintiffs sued ITT LLC as a Product Defendant. Plaintiffs' claims against ITT LLC arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

29. Defendant, **JENKINS BROS.**, is a defunct company incorporated under the laws of the State of New Jersey with its former principal place of business in Connecticut. At all times material hereto, JENKINS BROS. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Jenkins valves. Plaintiffs sued JENKINS BROS. as a Product Defendant. Plaintiffs' claims against JENKINS BROS. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

30. Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. METROPOLITAN LIFE INSURANCE COMPANY has done and does business in the Commonwealth of Massachusetts. Plaintiffs sued METROPOLITAN LIFE INSURANCE COMPANY as a Conspiracy Defendant.

31. Defendant, **PARAMOUNT GLOBAL**, f/k/a VIACOMCBS INC., f/k/a VIACOM INC., f/k/a CBS CORPORATION, a Delaware corporation f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, was and is a Delaware corporation with its principal place of business in New York. At all times material hereto, PARAMOUNT GLOBAL manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment,

including, but not limited to, asbestos-insulated and asbestos-containing Sturtevant forced draft blowers and auxiliary pump turbines. Plaintiffs sued PARAMOUNT GLOBAL as a Product Defendant. Plaintiffs' claims against PARAMOUNT GLOBAL arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

32.     Defendant, **REDCO CORPORATION** f/k/a CRANE CO., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material hereto, REDCO CORPORATION manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Crane, Chapman, and Swartwout valves, Cranite gaskets and packing, and other products. Plaintiffs sued REDCO CORPORATION as a Product Defendant. Plaintiffs' claims against REDCO CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

33.     Defendant, **SUPERIOR LIDGERWOOD MUNDY CORP.**, a/k/a LIDGERWOOD MANUFACTURING CO., individually and as successor to M.T. DAVIDSON CO., was and is a company incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin. At all times material hereto, SUPERIOR LIDGERWOOD MUNDY CORP. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Davidson pumps. Plaintiffs sued SUPERIOR LIDGERWOOD MUNDY CORP. as a

Product Defendant. Plaintiffs' claims against SUPERIOR LIDGERWOOD MUNDY CORP. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

34.     Defendant, **VALVES AND CONTROLS US, INC.** f/k/a WEIR VALVES & CONTROLS USA, INC. d/b/a ATWOOD & MORRILL CO., INC., was and is a Texas corporation with its principal place of business in Oregon. At all times material hereto, VALVES AND CONTROLS US, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Atwood & Morrill valves. Plaintiffs sued VALVES AND CONTROLS US, INC. as a Product Defendant. Plaintiff's claims against VALVES AND CONTROLS US, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

35.     Defendant, **WARREN PUMPS LLC**, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Maryland. WARREN PUMPS LLC is composed of a sole member, IMO Industries, Inc., a Delaware corporation. At all times material hereto, WARREN PUMPS LLC manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Warren and Quimby pumps. Plaintiffs sued WARREN PUMPS LLC as a Product Defendant. Plaintiffs' claims against WARREN PUMPS LLC arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

36.     Defendant, **CARLISLE INDUSTRIAL BRAKE & FRICTION, INC.**, was and is a Delaware corporation with its principal place of business in Arizona. At all times material hereto,

CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, Carlisle asbestos-containing brake linings. Plaintiffs sued CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. as a Product Defendant. Plaintiffs' claims against CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

37.    Defendant, **CATERPILLAR INC.**, was and is a Delaware corporation with its principal place of business in Texas.   At all times material hereto, CATERPILLAR INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Caterpillar engines. Plaintiffs sued CATERPILLAR INC. as a Product Defendant. Plaintiffs' claims against CATERPILLAR INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

38.    Defendant, **CRA TRAILERS, INC.**, f/k/a GREAT DANE TRAILERS, INC., was and is a Georgia corporation with its principal place of business in Georgia.  At all times material hereto, CRA TRAILERS, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Great Dane heavy truck trailers. Plaintiffs sued CRA TRAILERS, INC. as a Product Defendant. Plaintiffs' claims against CRA TRAILERS, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

39.    Defendant, **DAIMLER TRUCK NORTH AMERICA LLC** f/k/a DAIMLER TRUCKS NORTH AMERICA LLC f/k/a FREIGHTLINER LLC f/k/a FREIGHTLINER CORPORATION, individually and as successor to WESTERN STAR TRUCKS, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Oregon.  At all times material hereto, DAIMLER TRUCK NORTH AMERICA LLC manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Freightliner and Western Star heavy duty tractors and trucks. Plaintiffs sued DAIMLER TRUCK NORTH AMERICA LLC as a Product Defendant. Plaintiffs' claims against DAIMLER TRUCK NORTH AMERICA LLC arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

40.    Defendant, **DCO LLC** f/k/a DANA COMPANIES LLC, was and is a limited liability company incorporated under the laws of the State of Virginia with its principal place of business in Tennessee. At all times material hereto, DCO LLC manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Spicer clutches and Victor gaskets. Plaintiffs sued DCO LLC as a Product Defendant. Plaintiffs' claims against DCO LLC arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

41.    Defendant, **DETROIT DIESEL CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Michigan. At all times material hereto, DETROIT DIESEL CORPORATION manufactured,

20

engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Detroit Diesel engines. Plaintiffs sued DETROIT DIESEL CORPORATION as a Product Defendant. Plaintiffs' claims against DETROIT DIESEL CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

42.     Defendant, **EATON CORPORATION**, was and is an Ohio corporation with its principal place of business in Ohio.  At all times material hereto, EATON CORPORATION manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Eaton heavy duty tractor and truck axels and brake assemblies. Plaintiffs sued EATON CORPORATION as a Product Defendant. Plaintiffs' claims against EATON CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

43.     Defendant, **FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST, AS SUCCESSOR TO FELT PRODUCTS MANUFACTURING CO. AND/OR THE FORMER VELLUMOID DIVISION OF FEDERAL-MOGUL CORPORATION**, was and is a Delaware statutory trust. At all times material hereto, FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Fel-Pro and/or Vellumoid engine gaskets. Plaintiffs sued FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as a Product Defendant.

Plaintiffs' claims against FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

44.    Defendant, **FLEETPRIDE, INC.**, was and is an Alabama corporation with its principal place of business in Texas.  At all times material hereto, FLEETPRIDE, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing heavy duty tractor and truck brake parts and supplies and other equipment. Plaintiffs sued FLEETPRIDE, INC. as a Product Defendant. Plaintiffs' claims against FLEETPRIDE, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

45.    Defendant, **FORD MOTOR COMPANY**, was and is a Delaware corporation with its principal place of business in Michigan.  At all times material hereto, FORD MOTOR COMPANY manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Ford heavy duty tractors and trucks. Plaintiffs sued FORD MOTOR COMPANY as a Product Defendant. Plaintiffs' claims against FORD MOTOR COMPANY arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

46.    Defendant, **GENUINE PARTS COMPANY**, d/b/a NAPA, was and is a Georgia corporation with its principal place of business in Georgia. At all times material hereto, GENUINE PARTS COMPANY manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to,

asbestos-containing Rayloc heavy duty brake linings and other parts. Plaintiffs sued GENUINE PARTS COMPANY as a Product Defendant. Plaintiffs' claims against GENUINE PARTS COMPANY arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

47.     Defendant, **HOLLINGSWORTH & VOSE COMPANY**, was and is a Massachusetts corporation with its principal place of business in Massachusetts. At all times material hereto, HOLLINGSWORTH & VOSE COMPANY manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing paper for clutches. Plaintiffs sued HOLLINGSWORTH & VOSE COMPANY as a Product Defendant. Plaintiffs' claims against HOLLINGSWORTH & VOSE COMPANY arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

48.     Defendant, **HONEYWELL INTERNATIONAL INC.**, f/k/a ALLIEDSIGNAL INC., as successor-in-interest to THE BENDIX CORPORATION, was and is a Delaware corporation with its principal place of business in North Carolina. At all times material hereto, HONEYWELL INTERNATIONAL INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Bendix brakes. Plaintiffs sued HONEYWELL INTERNATIONAL INC. as a Product Defendant. Plaintiffs' claims against HONEYWELL INTERNATIONAL INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

23

49.     Defendant, **LIPE AUTOMATION CORP.** f./k/a LIPE-ROLLWAY CORPORATION, a dissolved New York corporation, was a New York corporation with its principal place of business in New York.   At all times material hereto, LIPE AUTOMATION CORP. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Lipe clutch assemblies for heavy duty tractors and trucks. Plaintiffs sued LIPE AUTOMATION CORP. as a Product Defendant. Plaintiffs' claims against LIPE AUTOMATION CORP. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

50.     Defendant, **MACK TRUCKS, INC.**, individually and as successor-in-interest to BROCKWAY MOTOR COMPANY, was and is a Pennsylvania corporation with its principal place of business in North Carolina.   At all times material hereto, MACK TRUCKS, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Mack heavy duty tractors and trucks. Plaintiffs sued MACK TRUCKS, INC. as a Product Defendant. Plaintiffs' claims against MACK TRUCKS, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

51.     Defendant, **MCCORD CORPORATION**, was and is a Michigan corporation with its principal place of business in Rhode Island.   At all times material hereto, MCCORD CORPORATION manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to,

asbestos-containing McCord engine gaskets. Plaintiffs sued MCCORD CORPORATION as a Product Defendant. Plaintiffs' claims against MCCORD CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

52.     Defendant, **MERITOR, INC.**, f/k/a ARVINMERITOR, INC., individually and as successor-in-interest to ROCKWELL INTERNATIONAL CORPORATION, was and is a Nevada corporation with its principal place of business in Michigan. At all times material hereto, MERITOR, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Rockwell heavy duty tractor and truck axels and brake assemblies. Plaintiffs sued MERITOR, INC. as a Product Defendant. Plaintiffs' claims against MERITOR, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

53.     Defendant, **MORSE TEC LLC**, f/k/a BORGWARNER MORSE TEC LLC, successor-by-merger to BORG-WARNER CORPORATION, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Michigan. At all times material hereto, MORSE TEC LLC manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Borg-Warner clutches. Plaintiffs sued MORSE TEC LLC as a Product Defendant. Plaintiffs' claims against MORSE TEC LLC arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

54.     Defendant, **NAVISTAR, INC.**, successor to INTERNATIONAL TRUCK AND ENGINE COMPANY f/k/a INTERNATIONAL HARVESTER COMPANY, was and is a Delaware

corporation with its principal place of business in Illinois. At all times material hereto, NAVISTAR, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing International Truck and International Harvester heavy duty tractors and trucks. Plaintiffs sued NAVISTAR, INC. as a Product Defendant. Plaintiffs' claims against NAVISTAR, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

55. Defendant, **PACCAR INC.**, d/b/a KENWORTH TRUCK COMPANY and PETERBILT TRUCK COMPANY, was and is a Delaware corporation with its principal place of business in Washington. At all times material hereto, PACCAR, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Kenworth and Peterbilt heavy duty tractors and trucks. Plaintiffs sued PACCAR, INC. as a Product Defendant. Plaintiffs' claims against PACCAR, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

56. Defendant, **PARKER-HANNIFIN CORPORATION**, successor to EIS AUTOMOTIVE CORPORATION, was and is an Ohio corporation with its principal place of business in Ohio. At all times material hereto, PARKER-HANNIFIN CORPORATION manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing EIS brakes. Plaintiffs sued PARKER-HANNIFIN CORPORATION as a Product

Defendant. Plaintiffs' claims against PARKER-HANNIFIN CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

57.    Defendant, **PNEUMO ABEX LLC**, successor-in-interest to ABEX CORPORATION, was and is a Delaware limited liability company with its principal place of business in New Jersey. At all times material hereto, PNEUMO ABEX LLC manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing American Brakeblok and Abex brakes. Plaintiffs sued PNEUMO ABEX LLC as a Product Defendant. Plaintiffs' claims against PNEUMO ABEX LLC arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

58.    Defendant, **SCAN-PAC MFG., INC.**, was and is a company incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin. At all times material hereto, SCAN-PAC MFG., INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Scan-Pac brakes. Plaintiffs sued SCAN-PAC MFG., INC. as a Product Defendant. Plaintiffs' claims against SCAN-PAC MFG., INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

59.    Defendant, **STANDARD MOTOR PRODUCTS, INC.**, successor-in-interest to EIS AUTOMOTIVE CORPORATION, was and is a New York corporation with its principal place of business in New York. At all times material hereto, STANDARD MOTOR PRODUCTS, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold,

supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing EIS brakes. Plaintiffs sued STANDARD MOTOR PRODUCTS, INC. as a Product Defendant. Plaintiffs' claims against STANDARD MOTOR PRODUCTS, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

60.     Defendant, **STRICK TRAILERS, LLC**, individually and as successor-in-interest to STRICK CORPORATION f/k/a STRICK TRAILER CORPORATION, was and is a Delaware limited liability company with its principal place of business in Pennsylvania. At all times material hereto, STRICK TRAILERS, LLC manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Strick heavy duty trailers. Plaintiffs sued STRICK TRAILERS, LLC as a Product Defendant. Plaintiffs' claims against STRICK TRAILERS, LLC arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

61.     Defendant, **THE TIMKEN COMPANY**, was and is an Ohio corporation with its principal place of business in Ohio. At all times material hereto, THE TIMKEN COMPANY manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Timken heavy truck axels and other products. Plaintiffs sued THE TIMKEN COMPANY as a Product Defendant. Plaintiffs' claims against THE TIMKEN COMPANY arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

62.     Defendant, **UNION CARBIDE CORPORATION**, was and is a New York

corporation with its principal place of business in Texas. At all times material hereto, UNION CARBIDE CORPORATION mined, manufactured, processed, imported, converted, compounded, designed, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, raw asbestos fiber supplied to manufacturers of asbestos-containing products. Plaintiffs sued UNION CARBIDE CORPORATION as a Product Defendant. Plaintiffs' claims against UNION CARBIDE CORPORATION arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

63. Defendant, **VOLVO GROUP NORTH AMERICA, LLC**, was and is a Delaware limited liability company with its principal place of business in North Carolina. At all times material hereto, VOLVO GROUP NORTH AMERICA, LLC manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Volvo heavy duty tractors and trucks. Plaintiffs sued VOLVO GROUP NORTH AMERICA, LLC as a Product Defendant. Plaintiffs' claims against VOLVO GROUP NORTH AMERICA, LLC arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

64. Defendant, **WESTERN STAR TRUCK SALES, INC.**, was and is a company incorporated under the laws of the State of Washington with its principal place of business in Oregon. At all times material hereto, WESTERN STAR TRUCK SALES, INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Western Star

29

heavy duty tractors and trucks. Plaintiffs sued WESTERN STAR TRUCK SALES, INC. as a Product Defendant. Plaintiffs' claims against WESTERN STAR TRUCK SALES, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

65. Defendant, **ZF ACTIVE SAFETY US INC.**, f/k/a KELSEY-HAYES COMPANY, individually and as successor-in-interest to FRUEHAUF CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Michigan. At all times material hereto, ZF ACTIVE SAFETY US INC. manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Kelsey-Hayes brakes and Fruehauf heavy duty trailers. Plaintiffs sued ZF ACTIVE SAFETY US INC. as a Product Defendant. Plaintiffs' claims against ZF ACTIVE SAFETY US INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

## BACKGROUND FACTS

66. Plaintiffs bring this action for monetary damages as a result of Plaintiff BRUCE S. WRIGHT contracting an asbestos-related disease.

67. Plaintiff BRUCE S. WRIGHT was diagnosed with malignant mesothelioma on or about November 13, 2022.

68. Plaintiff's mesothelioma was caused by his exposure to asbestos during the course of his military service and civilian employment.

69. During his work history, Plaintiff was exposed to asbestos through his service in the U.S. Navy as a fireman apprentice, fireman, and engineman.

70.    Plaintiff was exposed to Defendants' asbestos-insulated and asbestos-containing products while serving in the United States Navy as a fireman apprentice, fireman, and engineman aboard USS *Sierra* (AD-18) from approximately 1965 to 1967 and aboard USS *Boston* (CAG-1/CA-69) from approximately 1967 to 1969, including while the *Boston* was overhauled at Boston Naval Shipyard in Charlestown, Massachusetts, in or about 1968 to 1969. During this period, he worked with and near others who worked with various types of engines, machinery and equipment that exposed him to asbestos-containing materials, including products manufactured, sold, and/or installed by CUMMINS INC.; AIR & LIQUID SYSTEMS CORPORATION, as successor-by-merger to BUFFALO PUMPS, INC.; ALFA LAVAL INC.; CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION, individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION; CARRIER CORPORATION; ELLIOTT COMPANY; FLOWSERVE US INC., individually and as successor-in-interest to EDWARD VALVES, INC.; FMC CORPORATION, individually and as successor-in-interest to NORTHERN PUMPS; GENERAL ELECTRIC COMPANY; IMO INDUSTRIES, INC.; ITT LLC; JENKINS BROS.; PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC. f/k/a VIACOM INC. f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as successor-in-interest to BF STURTEVANT CO.; REDCO CORPORATION f/k/a CRANE CO.; SUPERIOR LIDGERWOOD MUNDY CORP., a/k/a LIDGERWOOD MANUFACTURING CO., individually and as successor to M.T. DAVIDSON CO.; VALVES AND CONTROLS US, INC. f/k/a WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL CO., INC.; and WARREN PUMPS, LLC. Further during this

31

time period, Plaintiff was exposed to these same products while homeported in Norfolk, Virginia, and servicing other ships in port while stationed on the destroyer tender, USS *Sierra* (AD-18).

71.    Plaintiff was further exposed to asbestos from asbestos-containing brake assemblies, clutches, and engines, and other asbestos-containing products in heavy trucks while employed as a heavy truck mechanic in and around the Worcester, Massachusetts, area from in or about 1970 until he retired in 2012.  During this period, he worked with various types of engines, machinery and equipment that exposed him to asbestos-containing materials, including products manufactured, sold, and/or installed by CUMMINS INC.; CARLISLE INDUSTRIAL BRAKE & FRICTION, INC., f/k/a MOTION CONTROL INDUSTRIES, INC.; CATERPILLAR INC.; CRA TRAILERS, INC. f/k/a GREAT DANE TRAILERS, INC.; DAIMLER TRUCK NORTH AMERICA LLC f/k/a DAIMLER TRUCKS NORTH AMERICA LLC f/k/a FREIGHTLINER LLC f/k/a FREIGHTLINER CORPORATION, individually and as successor to WESTERN STAR TRUCKS; DCO LLC f/k/a DANA COMPANIES LLC; DETROIT DIESEL CORPORATION; EATON CORPORATION; FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST, as successor to FELT PRODUCTS MANUFACTURING CO. and/or the former VELLUMOID DIVISION OF FEDERAL-MOGUL CORPORATION; FLEETPRIDE, INC.; FORD MOTOR COMPANY; GENUINE PARTS COMPANY, d/b/a NAPA; HOLLINGSWORTH & VOSE COMPANY; HONEYWELL INTERNATIONAL INC., f/k/a ALLIEDSIGNAL INC., as successor-in-interest to THE BENDIX CORPORATION; LIPE AUTOMATION CORP. f/k/a LIPE-ROLLWAY CORPORATION, a dissolved New York corporation; MACK TRUCKS, INC., individually and as successor-in-interest to BROCKWAY MOTOR COMPANY; MCCORD CORPORATION; MERITOR, INC., f/k/a ARVINMERITOR, INC., successor-in-interest to ROCKWELL

32

INTERNATIONAL CORPORATION; MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC LLC, successor-by-merger to BORG-WARNER CORPORATION; NAVISTAR, INC., successor to INTERNATIONAL TRUCK AND ENGINE COMPANY f/k/a INTERNATIONAL HARVESTER COMPANY; PACCAR INC., d/b/a KENWORTH TRUCK COMPANY and PETERBILT TRUCK COMPANY; PARKER-HANNIFIN CORPORATION, successor to EIS AUTOMOTIVE CORPORATION; PNEUMO ABEX LLC, successor-in-interest to ABEX CORPORATION; SCAN-PAC MFG., INC.; STANDARD MOTOR PRODUCTS, INC., successor-in-interest to EIS AUTOMOTIVE CORPORATION; STRICK TRAILERS, LLC, individually and as successor-in-interest to STRICK CORPORATION f/k/a STRICK TRAILER CORPORATION; THE TIMKEN COMPANY; UNION CARBIDE CORPORATION; VOLVO GROUP NORTH AMERICA, LLC; WESTERN STAR TRUCK SALES, INC.; ZF ACTIVE SAFETY US INC., f/k/a KELSEY-HAYES COMPANY, individually and as successor-in-interest to FRUEHAUF CORPORATION.

72.     Plaintiff worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to, asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

73.     Plaintiffs have been informed and believe, and thereon allege, that progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

74.     As a direct and proximate result of the conduct as alleged within, Plaintiff BRUCE S. WRIGHT suffered permanent injuries, including, but not limited to, mesothelioma and other lung damage, as well as the mental and emotional distress attendant thereto, from the effect of

33

exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

75.     As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff BRUCE S. WRIGHT incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment.

## FIRST CAUSE OF ACTION
### NEGLIGENCE

76.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

77.     At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos, and products manufactured for foreseeable use with asbestos products.

78.     At all times herein mentioned, Defendants and/or their "alternate entities" singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, inadequately warned or failed to warn of the health hazards, failed to provide adequate use instructions for eliminating the health risks inherent in the use of the products, labeled, assembled, distributed, leased, bought, offered for sale,

supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, other products containing asbestos, and products manufactured for foreseeable use with asbestos products, in that said products caused personal injuries to Plaintiff BRUCE S. WRIGHT and others similarly situated, (hereinafter collectively called "exposed persons"), while being used for their intended purpose and in a manner that was reasonably foreseeable.

79.     The asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that there was an alternative for asbestos that could have been used as the product or as a component instead of asbestos within a normally asbestos-containing/utilizing product. Said alternatives would have prevented the Defendants' asbestos and asbestos-containing products from causing Plaintiff's mesothelioma, due to an inability of any asbestos-alternative to penetrate the pleural lining of Plaintiff's lung, even if inhaled. Said alternatives came at a comparable cost to each of the Product Defendants and/or their "alternate entities." Said alternatives were of comparable utility to the asbestos or asbestos-containing products of Defendants and/or their "alternate entities." The gravity of the potential harm resulting from the use of Defendants' asbestos or asbestos-containing products, and the likelihood such harm would occur to users of its products, far outweighed any additional cost or marginal loss of functionality in creating and/or utilizing an alternative design, providing adequate warning of such potential harm, and/or providing adequate use instructions for eliminating the health risks inherent in the use of their products, thereby rendering the same defective, unsafe and dangerous for use by Plaintiff. The Product Defendants and/or their "alternate entities" had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, each of them, breached said duty of due care.

80. Defendants and/or their "alternate entities" knew or should have known, and intended that the aforementioned asbestos and asbestos-containing products would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to grinding sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling by exposed persons, including Plaintiff, would use or be in proximity to and exposed to said asbestos fibers.

81. At all times relevant, the Defendants and/or their "alternate entities" were aware of their asbestos and asbestos-containing products' defect but failed to adequately warn Plaintiff, Plaintiff's family members or others in their vicinity, as well as failed to adequately warn others of the known hazards associated with their products and/or failed to recall or retrofit their products. A reasonable manufacturer, distributor, or seller of Defendants' products would have, under the same or similar circumstances, adequately warned of the hazards associated with their products.

82. Plaintiff's family members and others in their vicinity used, handled or were otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in this Complaint.

83. Plaintiff BRUCE S. WRIGHT suffers from mesothelioma, a cancer related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury or disease.

36

84.     Defendants' conduct and defective products as described in this cause of action were a direct cause of Plaintiff's injuries, and all damages thereby sustained by Plaintiff. Plaintiffs therefore seek compensatory damages in order to make him whole, according to proof.

85.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, failing to recall or retrofit, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products or products manufactured for foreseeable use with asbestos products, Defendants and/or their "alternate entities" did so without disregard for the safety of "exposed persons" who came in contact with asbestos and asbestos-containing products, in that Defendants and/or their "alternate entities" had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos, asbestos-containing products or products manufactured for foreseeable use with asbestos products, including, but not limited to, asbestosis, mesothelioma, lung cancer, and other lung damages. This knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of Defendants and/or their "alternate entities."

86.     Defendants and their "alternate entities" were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos, asbestos-containing products, or products manufactured for foreseeable use with asbestos products, could cause injury, and Defendants and their "alternate entities," each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products or products manufactured for foreseeable use with asbestos products, would

37

assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

87.     The above-referenced conduct of Defendants and their "alternate entities," was motivated by the financial interest of Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, instructing, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos, asbestos-containing products and products manufactured for foreseeable use with asbestos products. Defendants were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" without warning them of the potential hazards and further induced persons to work with and be exposed thereto, including Plaintiff BRUCE S. WRIGHT.

88.     Plaintiff and other exposed persons did not know of the substantial danger of using Defendants' asbestos, asbestos containing-products, and products manufactured for foreseeable use with asbestos products.  The dangers inherent in the use of these products were not readily recognizable by Plaintiff or other exposed persons.  Defendants and/or their "alternate entities" further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

89.     Defendants and/or their "alternate entities" are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

38

90.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the Plaintiff BRUCE S. WRIGHT developed mesothelioma, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

91.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
## BREACH OF EXPRESS AND IMPLIED WARRANTY
### Mass. Gen. Laws c. 106 §§ 2-314 and 2-318

92.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

93.     Each of the Defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

94.     The implied warranty made by the Defendants and/or their "alternate entities" that the asbestos and asbestos-containing materials, products, or equipment, were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the Plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

95.     Plaintiff BRUCE S. WRIGHT was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of the Massachusetts General Laws ch. 106, §§2-314 and 2-318, as the defendants knew or had reason to know that their asbestos and asbestos-containing products would be used and that individuals such as BRUCE S. WRIGHT would come into contact with such asbestos materials.

39

96.     The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary purposes, and the particular purposes and requirements of Plaintiff BRUCE S. WRIGHT.

97.     The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

98.     Plaintiff, BRUCE S. WRIGHT, relied upon the defendants' skill or judgment in selecting suitable products for safe use.

99.     The defendants breached these warranties in that the asbestos and asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purpose.

100.    As a direct and proximate result of the defendants' breach or warranties, Plaintiff BRUCE S. WRIGHT contracted mesothelioma. Plaintiff BRUCE S. WRIGHT has suffered serious personal injuries, endured and will continue to endure great physical pain and suffering, has and will continue to suffer from severe mental anguish and distress, and has been prevented from transacting business. He has incurred and will continue to incur substantial medical expenses in connection with treatment of his asbestos-related disease. Further, his spouse and next of kin have been deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

101.    As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

### THIRD CAUSE OF ACTION
### FAILURE TO WARN AND DEFECTIVE DESIGN

102.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

103.   Under Massachusetts law, the relevant Defendants are liable for negligent failure to warn and inadequate warning or instruction, in that they were each a manufacturer or seller of a product who acted unreasonably in failing to provide such warning or instruction. The failure to provide adequate warning or instruction was a proximate cause of the harm for which Plaintiffs seek damages. At the time the relevant asbestos-containing products left the control of the relevant Defendant manufacturers or sellers, the products without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

104.   In the alternative, after the relevant asbestos-containing products left the control of the relevant Defendant manufacturer or sellers, the manufacturers or sellers became aware of or in the exercise of ordinary care should have known that the products posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

105.   The relevant Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)   Failed to advise Plaintiff of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

(b)   Failed or omitted to provide the Plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c)   Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment, to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

41

(d)    Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e)    Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f)    Did not recommend methods to reduce exposures;

(g)    After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform the Plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

## FOURTH CAUSE OF ACTION
## MARITIME NEGLIGENCE ALLEGATIONS

106.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

107.    This Count for maritime law negligence is brought against Defendants: CUMMINS INC.; AIR & LIQUID SYSTEMS CORPORATION, as successor-by-merger to BUFFALO PUMPS, INC.; ALFA LAVAL INC.; CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION, individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION; CARRIER CORPORATION; ELLIOTT COMPANY; FLOWSERVE US INC., individually and as successor-in-interest to EDWARD VALVES, INC.; FMC CORPORATION, individually and as successor-in-interest to NORTHERN PUMPS; GENERAL ELECTRIC COMPANY; IMO INDUSTRIES, INC.; ITT LLC; JENKINS BROS.; PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC. f/k/a VIACOM INC. f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as successor-in-interest to BF STURTEVANT

42

CO.; REDCO CORPORATION f/k/a CRANE CO.; SUPERIOR LIDGERWOOD MUNDY CORP., a/k/a LIDGERWOOD MANUFACTURING CO., individually and as successor to M.T. DAVIDSON CO.; VALVES AND CONTROLS US, INC. f/k/a WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL CO., INC.; and WARREN PUMPS, LLC.

108.    Maritime Defendants manufactured, designed, assembled, used, specified, sold, supplied, installed, or removed asbestos-containing products and/or equipment which was the source of airborne asbestos fibers to which BRUCE S. WRIGHT was exposed while onboard U.S. Navy vessels.

109.    The asbestos-containing products and/or equipment were being used in a manner for which they were intended and in a manner which was reasonably foreseeable.

110.    Maritime Defendants knew or should have known of the dangerous propensities of airborne asbestos fibers; that they had a toxic, poisonous, and highly deleterious effect upon the health of persons such as BRUCE S. WRIGHT, and others, exposed to the fibers could and would cause injury, disease and death.

111.    Maritime Defendants that manufactured equipment aboard Plaintiff BRUCE S. WRIGHT'S Naval vessels had a duty to warn about the dangers of asbestos-containing replacements parts that were necessary for their equipment to function as intended. They had a duty to warn about the hazards of asbestos exposure because (i) their products required incorporation of an asbestos part, (ii) they knew or had reason to know that the integrated product was likely to be dangerous for its intended uses, and (iii) they had no reason to believe that the product's users would realize the danger. Maritime Defendants' products required asbestos component parts to function as intended in that they directed that the asbestos parts be incorporated, they made their products with asbestos parts that they knew would require

43

replacement with a similar part, and/or their products would be useless without the asbestos component part. *See Sebright v. Gen. Elec. Co.*, 525 F.Supp.3d 217 (D. Mass. 2021).

112.    Maritime Defendants had a duty to exercise reasonable care and caution in manufacturing, designing, using, specifying, selling, supplying, installing, or removing asbestos-containing products and/or equipment, for the safety of BRUCE S. WRIGHT and others working with and around those products and/or equipment.

113.    Maritime Defendants breached their duties of case by one of more of the following wrongful acts or omissions, all of which were negligent, and/or willful and wanton, and/or undertaken with reckless disregard for, and deliberate indifference to, the foreseeable consequences and injuries to BRUCE S. WRIGHT and others:

a.  Failed to adequately warn BRUCE S. WRIGHT or others of the dangers and health hazards from working with or around the asbestos in their products and/or equipment;

114.

b.  Failed to investigate or test for the reasonably known and deleterious health effects of asbestos;

c.  Failed to instruct BRUCE S. WRIGHT, the United States Government, or the United States Navy, or others in the use of precautionary and/or safety measures relating to airborne asbestos fibers released from Defendants' asbestos products and/or equipment they worked with or around;

d.  Used defectively designed asbestos-containing products and/or equipment which did not protect against or prevent the release of asbestos fibers;

e.  Failed to warn BRUCE S. WRIGHT or others of the danger of airborne asbestos fibers which continued to be released after the products and/or equipment were installed at the premises;

f.  Used and/or specified unsafe techniques in the installation, removal, maintenance, and use of asbestos-containing products and/or equipment;  and

g.  Included asbestos in their products and equipment even though the danger and harm to BRUCE S. WRIGHT and others was reasonably foreseeable, and safer and adequate substitutes were readily available.

113.    As a direct and proximate result of the acts and omissions of the Maritime Defendants, BRUCE S. WRIGHT was injured as described above.

115.    Maritime Defendants' products were a substantial factor in causing the injuries described above.

116.    BRUCE S. WRIGHT was substantially exposed to asbestos attributable to Maritime Defendants for a substantial period of time while serving on board U.S. Navy vessels.

**FIFTH CAUSE OF ACTION**
**MARITIME STRICT LIABILITY ALLEGATIONS**

117.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

118.    BRUCE S. WRIGHT's injuries resulted from the condition of Maritime Defendants' products, specifically the fact that such products contained asbestos to which he was exposed.

119.    The condition of Maritime Defendants' asbestos-containing products and/or equipment was unreasonably dangerous to normal use.

120.    Maritime Defendants' products contained asbestos at the time the left Maritime Defendants' control.

121.    Maritime Defendants' asbestos-containing products and/or equipment were unreasonably dangerous to persons who were exposed to asbestos from them such as BRUCE S. WRIGHT.

122.    Maritime Defendants failed to warn BRUCE S. WRIGHT concerning the dangerous properties of their products and/or equipment.

45

## SIXTH CAUSE OF ACTION
## ADDITIONAL MARITIME PUNTIVE DAMAGES

123. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

124. Maritime law allows for the recovery of punitive damages absent any federal statute to the contrary.

125. Maritime Defendants' conduct as set forth in this complaint was intentional, outrageous, or wanton and reckless conduct, done with a conscious disregard of the rights of others such as BRUCE S. WRIGHT.

126. Upon information and belief, Maritime Defendants acted maliciously, and/or with intentional disregard for the rights of BRUCE S. WRIGHT for which Plaintiffs are entitled to recover punitive damages.

## SEVENTH CAUSE OF ACTION
## CONSPIRACY
## (AS TO DEFENDANT METROPOLITAL LIFE INSURANCE COMPANY)

127. Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment to which Plaintiff BRUCE S. WRIGHT was exposed, and such assistance by METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products and/or equipment by such manufacturers which proximately caused Plaintiff BRUCE S. WRIGHT's illness, injuries, and/or disabilities.

128. In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE

INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

129.   Plaintiff BRUCE S. WRIGHT's unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

130.   As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff BRUCE S. WRIGHT from asbestos exposure was increased, and (ii) BRUCE S. WRIGHT suffered the injuries previously described.

131.   In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff BRUCE S. WRIGHT. Plaintiff seeks compensatory and punitive damages against METROPOLITAN LIFE INSURANCE COMPANY as a result.

## EIGHTH CAUSE OF ACTION
### LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

132.   Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

133. Plaintiff LOUISE K. WRIGHT is the wife of Plaintiff BRUCE S. WRIGHT, and at all pertinent times has been the wife of Plaintiff BRUCE S. WRIGHT.

134. As a direct and proximate result of the breach of duty and wrongdoing of the defendants and the resultant injury to Plaintiff BRUCE S. WRIGHT, as more particularly described in the preceding Counts, Plaintiff LOUISE K. WRIGHT suffers a loss of her right to consortium with her husband and the loss of her husband's services, guidance, affection, comfort, protection, society, counsel, advice, and companionship, and she has suffered great mental anguish.

## ADDITIONAL DAMAGES

135. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

136. As a result of the development of asbestos-related diseases, Plaintiff BRUCE S. WRIGHT has suffered and sustained very serious injuries to his person, to wit: malignant mesothelioma.

137. Plaintiff has further suffered great pain, extreme nervousness, and mental anguish as a direct result of the aforesaid injuries.

138. Plaintiff verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; and further, that his expected life span has been greatly shortened.

139. Plaintiff alleges that as a result of the aforesaid illnesses, he has been forced to incur large amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

WHEREFORE, the Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, and special damages in an amount to be determined by the trier of fact, plus the costs of this action.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

i. Award the Plaintiffs compensatory damages, in an amount to be determined at trial;

ii. Award the Plaintiffs punitive damages against Maritime Defendants, in an amount to be determined at trial;

iii. Award the Plaintiffs pre-judgment and post-judgment interest and any other costs, expenses or fees to which the Plaintiffs may be entitled by law; and

iv. Award the Plaintiffs such other and further relief as is just and proper.

[THIS SPACE INTENTIONALLY LEFT BLANK.]

**PLAINTIFFS RESPECTFULLY DEMAND A JURY TO TRY THESE ISSUES.**

Respectfully submitted,
The Plaintiffs,
By their attorneys,

Dated: March 3, 2023

/s/ Christopher P. Duffy
Christopher P. Duffy, Esq.
BBO No. 648402
DUFFY LAW LLC
Masonic Temple Building
70 Washington Street, Suite 405
Salem, MA 01970
(978) 414-5714
duffy@cpduffylaw.com