UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRUCE S. WRIGHT and <br> LOUISE K. WRIGHT, <br><br> Plaintiffs, <br><br> v. <br><br> CUMMINS INC., et al, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 23-cv-10496-MJJ <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF DECISION**

October 31, 2025

JOUN, D.J.

This case involves personal injuries allegedly sustained due to asbestos exposure. The complaint names forty-eight defendants and raises eight claims. *See generally* [Doc. No. 1]. Husband and wife plaintiffs Bruce Wright ("Mr. Wright") and Louise Wright ("Mrs. Wright") (collectively, "Plaintiffs") assert four of those claims—negligence (Count One), breach of express and implied warranty (Count Two), failure to warn and defective design (Count Three), and loss of consortium (Count Eight)—against defendant Mack Trucks Inc. ("Mack").

On November 22, 2024, Mack filed a motion for summary judgment on all claims, *see* [Doc. No. 410], and I heard arguments on June 11, 2025, [Doc. No. 521]. For the reasons set forth below, Mack's motion is **GRANTED**.

1

I.  **BACKGROUND**

The following facts, unless otherwise noted, are either undisputed or recounted in the light most favorable to Plaintiffs, the non-moving party. *See Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105, 108 (1st Cir. 2024).

A.  <u>Use Of Asbestos In Automotive Vehicles And Related Health Issues</u>

Asbestos is a naturally occurring fibrous material known for its heat resistance, durability, and flexibility. *See* [Doc No. 437-15 at 2]. These properties led to its widespread use throughout the mid-20th century in friction products for the automotive industry, such as brake linings, and in engine sealing materials, such as gaskets. *See* [*id.*; Doc. No. 463-2 at 2]. Asbestos fibers can be small enough to be invisible and can be inhaled into the lungs, where they remain and accumulate. [Doc. No. 435-12 at 3]. Mechanics performing installation, repair, or replacement work involving friction products and gaskets may be exposed to respirable asbestos fibers if the products they are working with or even near contain asbestos. [*Id.* at 3; Doc. No. 463-2 at 2].

It is well documented that the process of servicing brake and clutch assemblies in heavy trucks can release millions of respirable asbestos fibers into the air in the form of asbestos dust. *E.g.*, [Doc. No. 435-12 at 3]. Any manipulation of new or unused brakes has the potential to release a harmful volume of respirable asbestos fibers into the air. *See* [Doc. No. 437-1 at ¶¶ 51–52]. In addition, new brakes may be ground, cut, beveled, or drilled during servicing to expedite break-in or reduce noise, and used brakes may be salvaged by grinding the surface to remove grease and dirt. [Doc. No. 435-16 at 10]. These processes release even more asbestos fibers into the air. [Doc. No. 437-1 at ¶ 48]. Moreover, asbestos fibers are released as brakes wear naturally, breaking off and mixing with dirt and other debris to form brake dust that emanates into a mechanic's workspace while repairing or replacing the asbestos-containing products. [Doc. No. 435-16 at 5–

6]. Mechanics use a variety of methods to clean loose dust from brakes and clutches, including by vacuuming, wiping, brushing, using compressed air, or utilizing a combination of these methods. [Doc. No. 437-15 at 3]. By at least 1968, the auto industry had determined that the use of compressed air to blow out brake and clutch assemblies generated measurable asbestos dust. [Doc. No. 437-1 at ¶¶ 47–50]. And by at least 1975, it was known that repairing and replacing brakes produced visible clouds of asbestos dust that lingered for several minutes and that significant concentrations of asbestos dust could travel seventy-five feet away. *See* [Doc. No. 435-16 at 9; Doc. No. 437-15 at 3].

The process for performing engine work is less time consuming than servicing brakes and clutches. Engines contain gaskets, which may wear down over time and need replacement. *See* [Doc. No. 438-7 at 9–11]. After a gasket is removed, the mechanic typically examines the seating surface and ensures it is smooth and clean before putting a new gasket on top. *See* [*id.* at 9]. Residual gasket material is removed to ensure the new gasket may seal properly and not leak. *See* [*id*].

Exposure to asbestos can cause serious health issues, including mesothelioma, lung cancer, and asbestosis. [Doc. No. 435-11 at 3]. The latency period for asbestos-related health problems can be decades. [*Id.*].

    **B.**    <u>**Mr. Wright's Employment In The Automotive Industry**</u>

Mr. Wright worked as a mechanic from 1969 until 2013. [Doc. No. 435-1 at ¶ 5]. He was employed at multiple shops throughout his career and worked on cars, light trucks, and heavy trucks manufactured by a variety of brands. *See generally* [*id.*]. In those roles, he performed maintenance and repair tasks, which included performing brake, gasket, and clutch work. [*Id.* at ¶ 15]. Mr. Wright generally followed the same procedures when servicing brakes, gaskets, and

3

clutches regardless of the jobsite or the type of vehicle he worked on, and he worked with both original equipment manufacturer ("OEM") parts and third-party replacement products to perform these tasks. *See, e.g.*, [Doc. No. 414-1 at 203–05, 262–65].

When servicing drum brakes, Mr. Wright would first remove the tires, brake drums, and backing plates and then remove dust and other debris on those components using compressed air from an air hose. [*Id.* at 98–100]. He blew the compressed air on each brake drum for approximately thirty seconds and on each backing plate for another thirty seconds. [*Id.*]. If the shop at which Mr. Wright worked contained a brake lathe, he would then evaluate the interior of the drum to determine whether it could be salvaged. *See* [*id.* at 115]. If the brake drum was capable of being resurfaced, Mr. Wright would put it into the brake lathe, which scraped off a small amount of metal on the interior of the drum so that it could be reused. [*Id.*]. If the brake drum could not be salvaged or the shop did not contain a brake lathe, Mr. Wright installed a new brake drum. *See* [*id.* at 115–16]. Before doing so, Mr. Wright would lightly sand each brake shoe for approximately thirty seconds to remove imperfections and avoid squealing. [*Id.* at 100]. It took Mr. Wright approximately three hours to service a single brake drum, and he testified that the tractor-trailers he worked on contained four-to-six brake drums. [*Id.* at 143].

Mr. Wright also performed engine work, which included, at a minimum, replacing head gaskets, water pump gaskets, and exhaust gaskets. *See* [*id.* at 103–04]. To remove gaskets from the engine body, Mr. Wright would either lift the gaskets off with his fingers or wedge a putty knife between the gasket and engine body to dislodge it. *See* [*id.* at 103–05]. Occasionally, the gasket left metal residue on the engine body, which Mr. Wright would remove with a putty knife. [*Id.* at 104–05]. Mr. Wright testified on at least one occasion that he used scrapers, wire brushes,

and air hoses to clean gasket debris, and that he would use a broom and dustpan to clean up. [*Id.* at 660–61].

Mr. Wright serviced Mack trucks while working at Package Industries from 1986 to 1987, A.J. Letourneau Trucking from 1990 to 1994, Mobile Maintenance from 1993 to 1994, and Lily Transportation from 1996 to 1994. *See* [Doc. No. 414-1 at 731–33].

C.   **Mack's Manufacture And Sale Of Asbestos-Containing Products**

Mack manufactures and sells heavy-duty trucks. [Doc. No. 435-1 at ¶ 25]. Mack admits that it sold asbestos-containing engine gaskets, clutches, and brake parts during at least a portion of the period in which Mr. Wright worked as a mechanic. [Doc. No. 435-2 at ¶¶ 44–48].

Specifically, Mack acknowledges that from 1986 to 1989 it sold trucks with both asbestos-containing and asbestos-free brakes. [*Id.* at ¶¶ 44–45]. Although the brakes in the "vast majority" of all models of Mack trucks were asbestos free by the mid-to-late '80s, the brakes used in new vehicles in "a couple of very low runner[] [models]" contained asbestos until the end of 1989. [Doc. No. 414-2 at 62]. Mack also acknowledges that from 1986 to 1991 it sold trucks with both asbestos-containing and asbestos-free gaskets. [Doc. No. 435-2 at ¶ 46; Doc. No. 414-3 at 32]. Further, the parties seem to agree that Mack began phasing out its asbestos-containing clutches in the '60s and ultimately ceased using asbestos-containing clutches in new vehicles and for distribution as replacement parts by the end of 1982. *See* [Doc. No. 435-1 at ¶ 32; Doc. No. 477 at ¶ 32; Doc. No. 435-6 at ¶¶ 7-8].

D.   **Mr. Wright's Diagnosis**

Mr. Wright was diagnosed with malignant mesothelioma in November 2022. [Doc. No. 435 at ¶ 4]. Plaintiffs allege that Mr. Wright's exposure to Mack's asbestos-containing components caused Mr. Wright's mesothelioma. *See generally* [Doc. No. 1].

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). Where, as here, the nonmovant bears the burden of proof at trial, the nonmovant "must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment." *Geshke v. Crocs, Inc.*, 740 F.3d 74, 77 (1st Cir. 2014); *see Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (nonmovant bearing burden of proof must "demonstrate that a trier of fact reasonably could find in his favor"). "[A] nonmovant may not rest upon mere allegations" but instead "must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial." *Bellone v. Southwick-Tolland Regional School District*, 748 F.3d 418, 424 (1st Cir. 2014). In reviewing a summary judgment motion, a court may examine "all of the record materials on file" "including depositions, documents, electronically stored information, affidavits or declarations…or other materials." Fed. R. Civ. P. 56(c); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).

## III.   DISCUSSION

Mack's motion for summary judgment raises two arguments: first, that Plaintiffs have failed to prove that exposure to asbestos-containing components within Mack's trucks caused Mr. Wright's mesothelioma (Counts One-Three) and, second, that Mrs. Wright's loss of consortium claim (Count Eight) must fail because Mr. Wright's personal injury claims fail. I agree with Mack.

A.  **Causation For Personal Injury Claims (Counts One-Three)**

The standard of proof for causation in asbestos cases is modified from that in a typical tort action to reflect the inherent difficulties associated with proving causation for prolonged latent diseases like mesothelioma or asbestosis. *Morin v. AutoZone Ne., Inc.,* 79 Mass. App. Ct. 39, 42–43 (2011). To prove causation in an asbestos case in Massachusetts, a plaintiff must establish three elements: "(1) that the defendant's product contained asbestos (product identification), (2) that the victim was exposed to the asbestos in the defendant's product (exposure), and (3) that such exposure was a substantial contributing factor in causing harm to the victim (substantial factor)." *Id.* at 42. "If evidence of any element is deficient, summary judgment would be appropriate." *Id.* at 43.

1.  **Product Identification**

Under *Morin*, satisfaction of the product identification element requires more than simply establishing that a defendant's product contained asbestos. 79 Mass. App. Ct. at 43–45. Where there is the possibility that a defendant sold both an asbestos-containing product and an asbestos-free product, a plaintiff must also set forth enough evidence to permit the fact finder to reasonably infer that the plaintiff was exposed to the version of the defendant's product that contained asbestos. *See id.* at 43 ("Evidence will be sufficient to reach the fact finder if it permits the reasonable inference of the presence at a work site of both the plaintiff and the defendant's asbestos-containing product for an appreciable period of exposure."); *id.* at 45 (assessing product identification: "AutoZone's representative admitted that the ADAP store in Hyannis carried asbestos-containing brake and clutch parts during the 1970s and for at least a time in the 1980s . . . . No question arises whether Bedford Fruit purchased parts from ADAP. The question is whether the parts contained asbestos.").

7

Although Plaintiffs need not establish "the particular occasions of exposure," the fact of exposure to the asbestos-containing product must be more than speculative. *Id.* at 43 ("[T]he adjusted standard of proof of causation does not relax to a level of speculation."); *id.* at 42 (citations omitted) ("[T]he nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts."). In other words, circumstantial evidence may be used to establish product identity so long as the evidence shows "that it is reasonably probable, not merely possible, that the defendant [or particular asbestos-containing component] was the source of the offending product." *See Smith v. Carlisle Indus. Brake & Friction, Inc.*, 379 So.3d 11, at *14 (Fla. Dist. Ct. App. 2023) (quoting *Clift v. Vose Hardware, Inc.*, 848 A.2d 1130, 1132 (R.I. 2004)). Under this standard, a jury could reasonably infer that Mr. Wright was exposed to Mack's asbestos-containing gaskets but not its asbestos-containing clutches or brakes.

There is no dispute that Mr. Wright worked on "hundreds" of Mack trucks while working at Package Industries from 1986 to 1987, A.J. Letourneau Trucking from 1990 to 1994, Mobile Maintenance from 1993 to 1994, and Lily Transportation from 1996 to 1998. *See* [Doc. No. 414-1 at 731–33; Doc. No. 435-2 at ¶¶ 9, 12, 21, 28, 36]. There is also no dispute that Mr. Wright generally performed brake, gasket, and clutch work throughout his decades-long career as a mechanic. [Doc. No. 435-2 at ¶ 4]. In addition, Mack admits that it sold trucks with asbestos-containing brakes, gaskets, and clutches during at least a portion of the time that Mr. Wright worked as a mechanic. Specifically, Mack admits that from 1986 to 1989 it sold trucks with both asbestos-containing and asbestos-free brakes. [*Id.* at ¶¶ 44–45]. Mack also admits that from 1986 to 1991 it sold trucks with both asbestos-containing and asbestos-free gaskets. [*Id.* at ¶ 46; Doc. No. 414-3 at 32]. Further, the parties seem to agree that Mack ceased using asbestos-containing clutches by the end of 1982. *See* [Doc. No. 435-1 at ¶ 32; Doc. No. 477 at ¶ 32].

However, the record is also clear that Mr. Wright did not necessarily perform brake, gasket, or clutch work every time he serviced a Mack truck. *See* [Doc. No. 414-1 at 445–46, 739] ("Q. And during your employment at Mobile Maintenance, you didn't perform any brake or gasket work on Mack trucks? A. That's correct."). Thus, the critical question is two-fold: whether Mr. Wright was exposed to a Mack brake, gasket, or clutch while servicing a Mack truck and, if so, whether that component contained asbestos.

### a.  Clutches

Plaintiffs have no reasonable expectation of proving that Mr. Wright was exposed to Mack's asbestos-containing clutches. The record contains conflicting evidence regarding whether Mr. Wright's first instance of alleged clutch work occurred at A.J. Letourneau Trucking between 1990 and 1994 or at Lily Transportation between 1996 and 1998. *See* [Doc. No. 435-2 at ¶ 38; Doc. No. 414-1 at 733] (claiming to have performed clutch work at both locations); *but see* [Doc. No. 435-2 at ¶ 25] (admitting to having never performed clutch work at A.J. Letourneau Trucking). However, even when drawing all inferences in the light most favorable to Plaintiffs, the fact remains that Mack's clutch facings were asbestos-free by the end of 1982, at least seven years prior to Mr. Wright's first alleged instance of clutch work with a Mack product. *See* [Doc. No. 435-6 at ¶¶ 7–8] ("Mack Trucks, Inc. ceased utilizing any asbestos-containing clutch facings in the assembly of new vehicles and for distribution as replacement parts no later than January 1, 1983. Between the late 1960s and January 1, 1983, a clutch in a Mack truck may or may not contain asbestos… After 1982 (beginning January 1, 1983), a clutch in a Mack truck would NOT have contained asbestos.").

9

### b. Brakes

Plaintiffs also have no reasonable expectation of proving that Mr. Wright was exposed to Mack's asbestos-containing brakes. Plaintiffs allege that Mr. Wright performed brake work on Mack trucks while at Package Industries and A.J. Letourneau Trucking. *See* [Doc. No. 435-2 at ¶¶ 16, 24]. However, Mr. Wright testified that he believed he removed and installed third-party brake products, not Mack brake products, while at Package Industries. *See* [Doc. No. 414-1 at 735] ("Q. And would you agree that the brakes you removed on Mack trucks weren't OEM? … [A.] I would assume not… They weren't new ones. Q. And for the new brakes you installed in Package Industries, these were Bendix, correct? A. Correct.").

Mr. Wright's brake work at A.J. Letourneau Trucking occurred "every couple of months" from 1990 to 1994. [Doc. No. 435-2 at ¶ 24]. Although Mr. Wright could not recall whether the worn brakes he removed were OEM, he installed Mack OEM replacement brake parts. [Doc. No. 414-1 at 447, 738]. However, the record is clear that by 1986 all of Mack's new highway trucks utilized asbestos-free brakes and that Mr. Wright primarily worked on Mack's R model trucks, which I understand to be highway trucks.[1] *See* [Doc. No. 414-1 at 737] ("Q. And can you remember the model? A. Most were R models."); [Doc. No. 414-2 at 103] ("[W]e believe [the brakes on] our highway trucks were asbestos-free … by the middle of '86 time period."). The record is also clear that the brakes in the "vast majority" of all models of new Mack trucks were asbestos-free by the mid-to-late '80s and that "by the end of 1989 [Mack] no longer had any asbestos-containing brakes in [their new] vehicles." [Doc. No. 414-2 at 61]. Additionally, the "availability of any sort of brakes of any design tracked very closely in replacement parts as with what was being produced on the

---

[1] *See* Allan Whiting & Jim Gibson, *Mack*, HISTORIC VEHICLES, https://historicvehicles.com.au/historic-truck-brands/mack/ (last accessed Oct. 29, 2025) ("Mack produced the R and U Models for highway use, and the RD and DM Models for construction use.").

10

line." [*Id.* at 63]. Therefore, while there is no dispute that Mr. Wright used Mack products while performing brake work at A.J. Letourneau, it is unlikely those components contained asbestos as Mr. Wright's work occurred at least several months, and more likely, years after Mack ceased using asbestos-containing brake products.

Plaintiffs attempt to create a dispute of material fact about the date by which Mack's brakes were asbestos-free by citing to testimony in a 2011 lawsuit. According to Plaintiffs, that testimony suggests that Mack used asbestos-containing brake products until 1991. *See* [Doc. No. 435 at 6–7] (citing [Doc. No. 435-1 at ¶¶ 30–31]). However, that testimony is clear that, at that time, Mack did not possess documents detailing the composition of the brake linings it purchased from third parties and that discovery of such information would require research. *See* [Doc. No. 435-4 at 11] ("A. Well, truth be known, we have no documents that contain the specification of the [brake] linings. It's – That's only within the knowledge of the manufacturer."). The testimony is also clear that the corporate representative "[didn't] know if [he] kn[e]w the last year" a Mack truck was sold with an asbestos-containing brake; that he attempted to deduce that information for a customer who had asked, not for some legally binding purpose; and that his estimate was based on what Mack was "able to determine" "to date." [*Id.* at 13]. The "educated guess," as Plaintiffs' refer to it, of a prior Mack corporate representative does not trump the more definitive answer of Mack's current corporate representative, who has the benefit of an additional decade of research into the subject. [Doc. No. 435-1 at ¶ 30].

    **c.**    <u>**Gaskets**</u>

The final inquiry is whether Mr. Wright was exposed to one of Mack's asbestos-containing gaskets. Mr. Wright performed gasket work on Mack trucks at both Package Industries in 1986 and at A.J. Letourneau Trucking from 1990 to 1994. [Doc. No. 435-2 at ¶¶ 20, 26]. The evidence

related to Mr. Wright's work at A.J. Letourneau Trucking cannot establish product identification because it results in impermissible speculation. It is undisputed that multiple vendors supplied gaskets compatible with Mack trucks and that Mr. Wright could not recall whether the gaskets he removed or installed at A.J. Letourneau Trucking were produced by Mack or a third party. *See* [*id*. at ¶¶ 26–27, 41; Doc. No. 414-1 at 265, 447; Doc. No. 414-3 at 30]. Therefore, a jury can only speculate whether Mr. Wright worked with a Mack gasket or third-party gasket and whether that gasket contained asbestos.

However, a jury could reasonably infer that Mr. Wright was exposed to a Mack asbestos-containing gasket while at Package Industries. Mr. Wright performed gasket work twice while at that location in 1986. [Doc. No. 435-2 at ¶ 20]. Although he could not recall the brand of gaskets he removed, he installed Mack replacement gaskets both times. [*Id*. at ¶¶ 20, 41]. It is also undisputed that Mack sold asbestos-containing gaskets during that time. [Doc. No. 414-3 at 32] ("Q. Okay. You agree that '86 until '91 there were also asbestos-containing gaskets available? A. We believe there may have been some gaskets available during that time period up until 1991 that included [asbestos]."). Although this evidence does not establish conclusively that Mr. Wright was exposed to an asbestos-containing gasket, I disagree with Mack that Plaintiffs must "affirmatively prove that Mr. Wright came into contact with any asbestos-containing OEM products sold or supplied by Mack." [Doc. No. 465 at 2–3]. The *Morin* court is clear that "[e]vidence will be sufficient to reach the fact finder if it permits the reasonable inference of the presence at a work site of both the plaintiff and the defendant's asbestos-containing product." *Morin*, 79 Mass. App. Ct. at 43. Therefore, Plaintiffs' evidence is sufficient to show product identification at this stage. *See Carlisle Indus. Brake & Friction, Inc.*, 379 So.3d at *14–*15 (explaining how the probability of exposure to a particular type of brake product increases as the instances of brake work increase).

To the extent Plaintiffs argue that Mack is responsible for asbestos-related injuries resulting from the use of third-party replacement gaskets due to its failure to warn of the reasonably foreseeable hazards, I note that neither the Supreme Court nor the First Circuit has addressed the issue, and courts in other jurisdictions that have are split. *See In re: Asbestos Products Liability Litigation (No. VI)*, 873 F.3d 232, 235 (3d Cir. 2017) (collecting cases); [Doc. No. 435 at 11–12]. Although Massachusetts courts typically impose a duty to exercise reasonable care upon manufacturers who know or should know of a reasonably foreseeable danger associated with their product, courts have also "never held a manufacturer liable … for failure to warn of risks created solely in the use or misuse of the product of another manufacturer." *Dombrowski v. ALFA Laval, Inc.*, No. CA 08-1938, 2010 WL 4168848 (Mass. Sup. Ct. July 1, 2010) (quoting *Mitchell v. Sky Climber, Inc.*, 396 Mass. 629, 632 (1986)); *H. P. Hood & Sons, Inc. v. Ford Motor Co.*, 370 Mass. 69, 75 (1976).

However, I need not decide the point. Although Plaintiffs argued that Mack has "a duty to warn potential victims such as Mr. Wright of the dangers associated with its equipment," Plaintiffs do not cite to anything in the record suggesting that Mack did not provide such a warning or argue that the warning, to the extent it existed, was insufficient. *See generally* [Doc. No. 435 at 11–12]. Such unsupported allegations are insufficient to forestall summary judgment. *Geshke v. Crocs, Inc.*, 740 F.3d 74, 77 (1st Cir. 2014) ("[The non-movant] must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment."); *Bellone*, 748 F.3d at 424 ("[A] nonmovant may not rest upon mere allegations" but instead "must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial.").

## 2. **Exposure**

Whereas the first element of causation deals with the fact of exposure to an asbestos-containing product, the second element deals with the requisite degree of exposure. To satisfy the second element of causation, "the plaintiff must produce evidence of a degree of exposure greater than 'insignificant or de minimis.'" *Morin*, 79 Mass. App. Ct. at 43 (quoting *Welch v. Keene Corp.*, 31 Mass. App. Ct. 157, 162 (1991)). Although the burden of proof is low, it must not fall to a level of speculation. *See Barraford v. T & N Ltd.*, 988 F. Supp. 2d 81, 88 (D. Mass. 2013) (quoting *O'Connor v. Raymark Indus., Inc.*, 401 Mass. 586, 588 (1988)) ("The exposure must be 'more than just casual or minimum exposure.'"); *see also Morin*, 79 Mass. App. Ct. at 53 n.11 ("A triable question of liability requires more than a minimal speculative possibility that the victim took a single breath of particles from the product of the charged defendant.").

Although Plaintiffs present evidence concerning the emanation of asbestos fibers during the removal of a worn asbestos gasket, they present no evidence concerning exposure during the installation of a new gasket. *See* [Doc. No. 435 at 7] (quoting [Doc. No. 435-1 at ¶¶35–40). The only evidence concerning exposure to asbestos from installing a new friction product relates to the installation of brake linings, and Plaintiffs present no argument how those two processes might be comparable. *See* [Doc. No. 435-1 at ¶ 37]. And, in fact, Mr. Wright testified that the installation of new gaskets was not a dusty process. *See* [Doc. No. 414-1 at 428] ("Q. And just sticking with, you know, after you've removed the old gasket, I'm just talking about installing the new gasket. Would that process take just a few seconds? … A. No, it's a few minutes. Q. A few minutes. And that isn't a dusty process, is it? … A. Not at that point."). Thus, while Plaintiffs have presented evidence that Mr. Wright may have installed one of Mack's asbestos-containing gaskets, there is no evidence whatsoever that he was exposed to the asbestos contained therein. As a result,

Plaintiffs have presented insufficient evidence to survive summary judgement. *See Morin*, 73 Mass. App. Ct. at 43 ("If evidence of any element is deficient, summary judgment would be appropriate.").

### B.    Loss Of Consortium (Count Eight)

Mack argues that Mrs. Wright's loss of consortium claim (Count Eight) should be dismissed because it is a derivative claim that can only be asserted if at least one of the underlying personal injury claims (Counts One-Three) survive. [Doc. No. 411 at 9]. Having granted summary judgment on the underlying personal injury claims, Mack's motion for summary judgment on the loss of consortium claim is also granted.

## IV.    CONCLUSION

For the reasons given above, Mack's motion for summary judgement, [Doc. No. 410], is GRANTED.


SO ORDERED.

/s/ Myong J. Joun
United States District Judge